UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case Number: 15-10224-CIV-MARTINEZ-GOODMAN

CHRISTINA DEMARIA-DOMINGUEZ, on
behalf of herself and all others similarly situated,

    Plaintiff,

vs.

KEYS PRODUCTIONS, INC. d/b/a
Red Garter Saloon, MARK ROSSI, individually,

    Defendants.
_____/

## ORDER AND JUDGMENT GRANTING MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF SERVICE AWARDS, AND APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

This case comes before the Court on Plaintiffs' Motion for Final Approval of the Class Action Settlement and Approval of Service Awards, and Incorporated Memorandum of law in Support ("Motion for Final Approval") [ECF No. 57] and Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Fees.") [ECF No. 58]. The Court held a final fairness hearing on November 30, 2016 (the "Fairness Hearing") concerning the Motion for Final Approval and the parties' Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"), which the Court previously preliminarily approved.

In this case, Plaintiffs allege that Defendants own and/or operate an adult entertainment club that conducts business under the moniker "Red Garter Saloon," located in Key West, Florida. Plaintiffs and the Class Members claim to have performed as entertainers at the nightclub (referred to herein as "dancers" or "entertainers"). The Class consists of all dancers

who performed for at least one week at Red Garter at any time from November 1, 2010 through February 29, 2016. As entertainers, Plaintiffs and the Class Members were primarily responsible for entertaining patrons at the nightclub.

At all times throughout the relevant time period, Plaintiffs received no hourly wage or salary from Red Garter based upon their classification as non-employees (colloquially termed "independent contractors"). In this lawsuit (also referred to herein as the "Litigation"), Plaintiffs alleged that Defendants misclassified them as independent contractors, when they were actually employees, and as a result, Defendants failed to pay them legally mandated minimum wages and/or overtime as required under the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA").

Plaintiffs alleged that Defendants violated the FLSA and FMWA by failing to pay the entertainers the required minimum wage and/or overtime wages in one or more workweeks. As such, Plaintiffs claimed that Defendants were liable to them for an amount equal to the minimum wage for all hours worked and time and one-half minimum wage for any overtime hours. *See* ECF No. 21 (Plaintiff's First Amended Class/Collective Action Complaint).

Defendants maintain that neither Plaintiffs nor any of the entertainers were misclassified as independent contractors and assert that Plaintiffs and the putative class fall outside of the coverage provided by the FLSA and FMWA. The parties also continue to disagree about the type and amount of damages each entertainer would be entitled to (if any), and even to the extent Plaintiffs were ultimately to prevail in the case and obtain a finding that they were Defendants' employees. Specifically, the Defendants asserted and continue to assert that they have substantial defenses to Plaintiffs' claims and those of the putative class, including, in part,

that: (1) many of the dancers must arbitrate their claims pursuant to written contracts; (2) many of the dancers have waived their right to pursue a class or collective action; (3) the dancers are all properly classified as non-employees, and in fact, affirmatively chose not to be treated as employees; (4) the dancers make more money as independent contractors than they would as employees, and after potential offset of non-tip monies paid to the dancers, certain of the exotic dancers would not be entitled to any compensation, damages or restitution; (5) Defendant Rossi does not qualify for individual liability; (6) many claims of the Plaintiffs and the putative class are barred by the applicable statute of limitations; (7) Defendants cannot be found to have committed "willful" violations and therefore liquidated damages are not available; and (8) in any event, there is serious doubt about whether Defendants could satisfy a substantial judgment with immediately available assets.

A. **Procedural History**

Named Plaintiff Demaria-Dominguez commenced this case by filing her Complaint on December 4, 2015. Thereafter, she filed her First Amended Class/Collective Action Complaint on January 6, 2016, in which she added class action claims under the Florida Constitution. Subsequently, the parties engaged in extensive, detailed discussions regarding resolution of this matter on a class-wide basis, and ultimately agreed to attend mediation. Mediation took place on March 4, 2016. After extensive negotiations which continued after mediation, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case. After lengthy additional negotiation and further conferences, the Parties reduced their agreement to a formal Joint Stipulation of Class Action Settlement Agreement and Release.

On April 8, 2016, the Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support (the "Motion for Preliminary Approval") [ECF No. 46], which this Court granted on May 9, 2016. *See* ECF No. 48.

On June 13, 2016, the Claims Administrator mailed the Class Notice, the Claim Form, and the Opt-Out Form to approximately 313 class members for whom Defendants provided addresses. Likewise, on June 13, 2016, the Supplemental Class Notice was published in the Miami Herald's legal notice section, and published on the Florida Public Notices webpage located at http://floridapublicnotices.com/.

To be considered timely, all Completed Claim Forms, Opt-Out Forms and objections had to be postmarked by August 12, 2016. As of the Fairness Hearing on November 30, 2016, assuming all such postmarked submissions had been received, no member has objected to the settlement, thirty-four (34) class members have opted in and made valid claims (approximately 11%) and seven (7) class members have excluded themselves (approximately 2%).

### B. Discovery

While the parties did not engage in formal discovery *per se*, Class Counsel obtained, through their own investigation and from Defendants' informal, voluntary disclosures, information regarding the agreements Red Garter has required dancers to execute, the relevant policies and procedures of Defendants, and estimates regarding number of hours worked during the class period. Estimates regarding the number of hours worked were necessary because Defendants did not maintain time records for the entertainers. Class Counsel also interviewed

individuals who might have been FLSA and/or Rule 23 class members to verify these estimates, and the information Class Counsel received was considered with Red Garter's estimates. Defendants represented that they did not keep time records or schedules which indicate the exact number of hours worked during the Class Period. Class Counsel also obtained declarations from Defendants to confirm certain key facts under oath.

### C. Settlement Negotiations and Mediation

On March 4, 2016, the Parties participated in an all-day mediation in Key West, Florida, with the assistance of Mediator, Judge Herbert Stettin. Judge Stettin is a very knowledgeable and skilled wage and hour and class action mediator. After extensive negotiations which continued after mediation, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case. After lengthy additional negotiation and further conferences, the Parties reduced their agreement to a formal Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"), which the Court previously preliminary approved [ECF Nos. 46 & 48], and for which the parties now seek final approval.

### D. The Class Received Adequate Notice

On May 9, 2016, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to Class Members. *See* ECF No. 48.

On June 13, 2016, the Claims Administrator mailed the Class Notice, Claim Form, and Opt-Out form to 313 class members for whom mailing addresses were available. Of those, 118 were initially returned. After performing procedures to obtain updated addresses, the Claims Administrator re-mailed the Notice of Settlement, Claim Form, and Opt-Out Form to 83 Class

Members. Additionally, 4 mailings were forwarded. Of this total, 34 mailings were returned a second time. Class members could also make a claim, opt out or object either via mail or through a case-specific website created by the Claims Administrator. Under the Settlement Agreement, the post-mark deadline to make a claim, opt out or object was August 12, 2016. These dates were clearly stated in the Class Notice.

Thirty-four (34) class members submitted valid claims (approximately 11%), and seven (7) class members have excluded themselves (approximately 2%). No class member timely objected.

### E. Final Approval is Warranted

Having considered the Motion for Final Approval, the supporting memorandum of law, the Affidavit of Chad E. Levy, and exhibits thereto; the oral arguments presented at the Fairness Hearing; and the complete record in this matter, for the reasons set forth therein and stated on the record at the Fairness Hearing and for good cause shown,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:**

1. This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used in this Final Judgment shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

2. The Court certifies the Rule 23 and FLSA Classes for purposes of the settlement.

3. This Court approves the Settlement Agreement and all terms set forth in the Settlement Agreement and finds that the Settlement Agreement meets the requirements of Rule 23 and the FLSA. The Settlement Agreement is, in all respects, fair, reasonable, adequate, not a

product of collusion, and the resolution of a bona fide dispute. *See* Fed. R. Civ. P. 23(e); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).

4. Both the ultimately applicable $1,100,000 Base Settlement Payment fund and the $1,200,000.00 Maximum Settlement Payment are substantial and includes meaningful payments to Class Members.[1] In reaching this conclusion, the Court is satisfied that the settlement was fairly and honestly negotiated. It was the result of vigorous arm's length negotiations, which were undertaken in good faith by counsel with extensive experience in litigation wage and hour class actions, and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits.").

5. The parties' judgment that the settlement is fair and reasonable, as well as the Class's favorable response to the settlement, weigh in favor of final approval of the settlement. *See, e.g., Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") (citing *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-119 (3d

---

[1] In this action, Defendants agreed to a Base Settlement Payment of $1,100,000 (the "Fund"), and a Maximum Settlement Payment of up to $1,200,00.00. In the event that the Fund was insufficient to compensate all of the Qualified Class Members in accordance with the Maximum Net Fund Allocation (i.e., the highest allocation of the Net Settlement Fund that Qualified Class Members were entitled to under the Agreement and which is determined by multiplying the number of Qualified Months worked by a particular Qualified Class Member by $150 per month), Defendants would pay the Maximum Settlement Payment of $1,200,000, and the Qualified Class Members would receive amounts pursuant to the Minimum Net Settlement Fund (determined by multiplying the number of Qualified Months worked by a particular Qualified Class Member by $111.01 per month). *See* Settlement Agreement, ¶¶ 1.2, 1.15, 1.16, 1.17, 3.1.1, 3.1.2. Because the Fund should be sufficient to compensate Qualified Class Members pursuant to the Maximum Net Settlement Fund Allocation, the Base Settlement Payment is what applies.

Cir. 1990); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement.").

6. The Court therefore enters Judgment in accordance with the Settlement Agreement. Upon the effective date of the Settlement, each Participating Class Member shall release all Florida state law claims asserted in this lawsuit, along with all other claims arising out of or relating to the same alleged conduct, as set forth in the Settlement Agreement, and attorneys' fees and costs to date related to such claims.

7. All Qualified Class Members additionally forever and fully release all FLSA claims asserted in this lawsuit, including all FLSA claims for unpaid overtime wages, liquidated damages and attorneys' fees and costs related to such claims.

8. This Court awards Class Counsel 24.7% of the Maximum Settlement Payment, (or 26.9% of the Base Settlement Payment), or $295,900 as attorneys' fees and costs and expenses incurred in this Litigation, to be paid from the Base Settlement Payment fund as set forth in the Settlement Agreement.

9. The Court finds that the amount of fees requested is fair and reasonable using the "percentage of recovery method," which is consistent with the dictates of the Eleventh Circuit. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

10. Class Counsel's request for 24.7% of the Maximum Settlement Payment (or 26.9% of the Base Settlement Fund Payment) is also consistent with the trend in this Circuit. *See, e.g., Encarnacion v. J.W. Lee, Inc.*, No. 14-CIV-61927-DIMITROULEAS (S.D. Fla. Oct. 22, 2015), ECF No. 87 at 9 (awarding 27.4% of the Maximum Settlement Payment in similar

entertainer litigation for a total amount of approximately $1,600,000 in attorneys' fees and costs); *Seghroughni v. Advantus Rest. Inc.*, No. No. 8:12–cv–2000–T–23TBM, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155, at *4 (S.D Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Hosier v. Mattress Firm, Inc.*, No. 3:10–cv–294–J–32JRK, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, Nos. 1:10–CV–00117, 1:11–CV–00029, 2012 WL 1355573, at *5 (S.D. Ga. Apr. 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stres, Inc.*, No. 8:08–CV–691–T–30TBM, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95-cv-02152-ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrocholoride Antitrust Litig.*, No. 1:99-md-01317-PAS, Doc. No. 1557 at 8-10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

11. The attorneys' fees requested were entirely contingent upon success in this litigation. Class Counsel expended significant time and effort and advanced costs and expenses without any guarantee of compensation.

12. This Court approves the following service payments, to be paid from the Maximum Settlement Payment as set out in the Settlement Agreement: $15,000 to Settlement Class Representative Christina Demaria-Dominguez (Named Plaintiff), and $2,000 to Settlement Class Representatives Carissa Stickney, Connie Idgaf, Monica Bailey, Christina Novick, Simone Swanson, Lea McKenzie-Kerr, Ashley Mansel, Maria Hernandez, and Kyra Alejandro (Opt-In Plaintiffs). The service payments are in recognition of the Class Representative Plaintiffs' and designated opt-in Plaintiffs' active participation in this action and service to the settlement Class, as well as the risks they undertook for the benefit of the Class. These service payments are reasonable in light of the efforts these individuals expended in furthering the interests of the class. *David. v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010) ("[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.").

13. Defendants shall pay the total amount of the Qualified Class Members' claims, Class Counsel's fees and costs in the amount of $295,900, as set out in the Settlement Agreement, in twenty-four (24) equal monthly payments starting thirty (30) days after the Effective Date and continuing every thirty (30) days thereafter for the following twenty-three (23) months.

14. Defendants shall pay the total amount of the service payments sixty (60) days after the Effective Date.

15. The *Demaria-Dominguez* case is **DISMISSED with prejudice** and without costs to any party, except as ordered in Paragraph 13 above pursuant to the Parties' Settlement Agreement. All Participating and Qualifying Class Members are barred and permanently enjoined from participating in any other individual or class lawsuit against the Releasees concerning the Released Claims, as defined in Section 4 of the Settlement Agreement.

16. Without affecting the finality of this Judgment and Order, the Court reserves continuing and exclusive jurisdiction over parties to the Settlement Agreement to administer, supervise, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the parties.

17. The Parties having so agreed, good cause appearing, and there being no just reason for delay, it is expressly directed that this Final Judgment and Order be, and hereby is, entered as a final order.

DONE AND ORDERED in Chambers at Miami, Florida, this 7 day of December, 2016.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record